UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PROBATTER SPORTS, LLC, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | 3:05-cv-01975-VLB |
| | : | |
| SPORTS TUTOR, INC., | : | JULY 15, 2015 |
| Defendant. | : | |

MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [276] AND GRANTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [298]

Plaintiff ProBatter Sports, LLC ("ProBatter") and defendant Sports Tutor, Inc. ("Sports Tutor") cross-move for partial summary judgment on Probatter's claims that Sport's Tutor's ball-throwing machine infringes on claims 1–12, 25–27, and 31 of plaintiff's United States Patent Number 6,182,649 ("the '649 patent") and claim 1 of plaintiff's United States Patent Number 6,546,924 ("the '924 patent"). In two separate motions, defendant moved for summary judgment on its affirmative defense of invalidity as to both patents and on plaintiff's Connecticut Unfair Trade Practices Act claim. Those motions are the subject of two other memoranda of decision and are not discussed here. For the reasons stated below, the Court DENIES defendant's motion for partial summary judgment on plaintiff's infringement claims and GRANTS plaintiff's motion for summary judgment on its infringement claims.[1]

---

[1] Probatter also moves for "summary judgment that Sports Tutor's infringement has been willful and wanton." The Court cannot make such a ruling without first resolving defendant's invalidity defense.

[2] Plaintiff also asserts that defendant's argument does not foreclose the

1

## I.    LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).  "At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No. 3:03-cv-00481, 2004 U.S. Dist. LEXIS 22112, at *4 (D. Conn. Oct. 20, 2004) (citing *Gottlieb*, 84 F.3d at 518); *see Martinez v. Conn. State Library*, 817 F.Supp.2d 28, 37 (D.

Conn. 2011).   Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearance Co.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## II.   <u>DEFENDANT'S SUMMARY JUDGMENT MOTION</u>

Defendant raises only one argument in support of its summary judgment motion: it does not infringe on the '649 patent claims because they require the use of a programmable controller (defined as requiring relay ladder diagram language) and defendant's machine does not use a programmable controller (with relay ladder diagram language).   ECF No. 277.   Plaintiff opposes on the ground that defendant cannot argue noninfringement because defendant did not plead noninfringement as an affirmative defense and that a programmable controller does not require the use of relay ladder diagram language.[2]   ECF No. 285.   The Court denies defendant's summary judgment motion because it is procedurally improper and, in the alternative, because a programmable controller does not require the use of relay ladder diagram language.   Section II addresses whether: (a) defendant's summary judgment motion is procedurally improper; (b) defendant is barred from asserting noninfringment; and (c) a programmable controller requires the use of relay ladder diagram language.

_____

[2] Plaintiff also asserts that defendant's argument does not foreclose the possibility that defendant could be found liable for infringement under the doctrine of equivalents or for infringement of claim 1 of the '924 patent.   ECF No. 285 at 1 n.1, 14–19.   The Court need not address these issues to resolve defendant's summary judgment motion because defendant's only argument is meritless.   The issues are discussed in Section III.

### A. Defendant's Faulty 56(a)(1) Statement

As an initial matter, defendant failed to comply with the requirements of Local Rule 56. Local Rule 56 requires that each statement of material fact "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  D. Conn. Local R. 56(a)(3).  Defendant provides no citations in support of its five-paragraph statement of material facts.  ECF No. 278.  Defendant's deficient submission alone warrants the denial of summary judgment.  *See* Local Rule 56(a)(3) ("[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in . . . denying the motion for summary judgment.");  *Tross v. Ritz Carlton Hotel Co.*, 928 F.Supp.2d 498, 503–04 (D. Conn. 2013) ("In this Circuit, a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion." (citing *Tota v. Bentley*, 379 F. App'x 31, 32–22 (2d Cir. 2010)); *Traylor v. Awwa*, No. 3:11-cv-132, 2014 U.S. Dist. LEXIS 20002, at *2 (D. Conn. Feb. 10, 2014) (denying plaintiff's motion for summary judgment where plaintiff failed to "present evidence showing that there is no genuine dispute of material fact and that facts as to which there is no genuine dispute show that he is entitled to judgment as a matter of law.").

### B. Defendant's Failure to Raise NonInfringement as an Affirmative Defense

Before again weighing in on the definition of a programmable controller, the Court addresses whether defendant may argue noninfringement.  In its opposition, plaintiff argues that defendant waived any noninfringement defense

4

because defendant did not plead noninfringement as an affirmative defense.  ECF No. 285 at 6–9.   Defendant replies that it sufficiently pleaded noninfringement by denying infringement and, even assuming error, leave to amend should be granted because the error was harmless.  ECF No. 290 at 2–5.

The Patent Act identifies "noninfringement" as a "defense" that "shall be pleaded."   35 U.S.C. § 282(b)(1).  Citing to this statute, the Federal Circuit has noted, but never held, that noninfringement is an affirmative defense.  *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006).  Ordinarily, a general denial does not sufficiently plead an affirmative defense, and "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (internal quotation marks omitted). Patent law, however, presents a unique application of the rule permitting waiver of nonasserted affirmative defenses:

> "The distinction between negative defenses in the form of Rule 8(b) denials and affirmative defenses pursuant to Rule 8(c) normally is not difficult, for the former includes everything which controverts the plaintiff's prima facie case whereas the latter raises matters outside the case, those which are in the nature of an avoidance. It appears that there is but one exception at the present time to the general rule as thus stated, and that exception is in the field of patent litigation."

HORWITZ & HORWITZ, PATENT LITIGATION: PROCEDURE AND TACTICS § 3.03[2][b].

Thus, it is unclear whether a patent defendant adequately pleads noninfringement through denial.  *Id.* ("The degree of particularity required by Section 282 is not clear. The defense of noninfringement is mentioned only in Category (1), and the use of this or an equivalent term in the answer should be sufficient compliance with the statute); *see* 5A-18 CHISUM ON PATENTS § 18.06

5

("[A]n accused infringer meets this pleading burden with either a denial of a patentee's infringement allegation or by a positive assertion of noninfringement.").   It is also unclear whether, even assuming that denial is insufficient, waiver would be warranted.  *But see Para Gear Equip. Co. v. Square One*, N.D. Ill. 04-cv-601, doc. 236 (Min. Entry ruling that party waived any affirmative defense of noninfringement by denying rather than affirmatively pleading noninfringement).   Other courts have declined to strike a pleading as redundant because it both denied infringement and pleaded noninfringement as a defense*. See*, *e.g.*, *Trading Technologies Int'l, Inc. v. BCG Partners, Inc.*, 2011 WL 3946581, at *5 (N.D. Ill. Sept. 2, 2011).   However, striking a pleading as redundant is categorically different from waiver.   *Cf. Coach Inc. v. Kmart Corps.*, 756 F.Supp.2d 421 (S.D.N.Y. 2010) (no prejudicial harm results from redundancy).

Here, rather than address whether defendant adequately pleaded noninfringement, the Court granted defendant leave to amend.  ECF No. 428.  The Court now rules that the application of waiver is not warranted.  The purpose of pleading is to provide notice.  *In re Trilegiant Corp., Inc.*, 11 F.Supp.3d 82, 131 (D. Conn. 2014) ("The purpose of the pleadings is to put the [parties] on notice."). Waiver operates to prevent unfair surprise due to lack of notice.   *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) ("Because [defendant] faced no unfair surprise, [plaintiff's] technical failure to comply with Rule 8(c) is not fatal to this case.").   In this case, plaintiff cannot argue that defendant's assertion of noninfringment took plaintiff by surprise: defendant denied infringement in its amended answer and has maintained its

defense of noninfringement throughout the litigation.   Applying waiver in these circumstances would be an unduly harsh remedy for failing to reiterate the same thing twice – particularly in light of the fact that it is not even clear whether defendant was required to do so.  *Cf. Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) ("The fundamental command of the Federal Rules of Civil Procedure is 'never to exalt form over substance.'" (quotation omitted)). Accordingly, the Court declines to rule that this defense has been waived.

### C. Defendant's NonInfringement Argument

Defendant argues that, according to this Court's claim construction opinion, all of the relevant claims in the '649 patent require a programmable controller and that a programmable controller requires the use the relay ladder diagram programming language.  ECF No. 277 at 3–5.  Defendant concludes that it does not infringe on any of the claims in the '649 patent because its device does not use relay ladder diagram language.  *Id.* at 5.  Defendant's statement of material facts establishes only that its machine does not use a relay ladder diagram language.  ECF No. 278 at ¶ 4.  Plaintiff's counterstatement of material facts admits that defendant's device does not utilize relay ladder diagram language, ECF No. 286 at ¶ 4, but plaintiff's memorandum in opposition argues that a programmable controller does not require the use of relay ladder diagram language, ECF No. 285 at 11-12.  Accordingly, to determine whether defendant is entitled to summary judgment, the Court need only address whether a programmable controller necessitates the use of relay ladder diagram language. This is a question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d

7

**967, 979 (Fed. Cir. 1995) (en banc),** *aff'd,* **517 U.S. 370 (1996).**

The Court begins by noting that, despite its March 31, 2014 ruling on claim construction, the parties continue to dispute the definition of programmable controller. In the claim construction ruling, the Court adopted the parties' <u>agreed upon</u> definition, which reads as follows:

> A control device, normally used in industrial control applications, that employs the hardware architecture of a computer and a relay ladder diagram language. Also known as a programmable logic controller.
>
> Programmable controllers . . . Electronic computers that are used for the control of machines and manufacturing processes through the implementation of specific functions such as logic, sequencing, timing, counting, and arithmetic. They are also known as programmable logic controllers (PLCs).

ECF No. 274 at 10. Despite having spent a great amount of resources, both those of the Court and of the parties, the parties now dispute the meaning and scope of this definition, in an apparent attempt to reopen claim construction with regard to the definition of programmable controller.

Defendant argues that, under this Court's definition of programmable controller, a device must utilize relay ladder diagram language. ECF No. 277 at 4-5. Defendant reasons that "'programmable controllers' are a distinct class of devices" and that "[programmable controllers] are distinguished from other programmable electronic devices by, inter alia, the fact that they use a relay ladder diagram language." ECF No. 277 at 4. In support, defendant cites only the Court's ruling on claim construction. *Id.* In its reply brief, defendant again argues that "[t]he Claim Construction Order clearly and unambiguously states that a programmable controller employs a relay ladder diagram language." ECF

No. 290 at 6 (internal quotation marks and alterations omitted).  Defendant neither acknowledges the definition's second paragraph nor provides the Court with any guidance on how to interpret the relationship between the two paragraphs.

Plaintiff argues that the parties' agreed upon definition does not require the use of relay ladder diagram language. ECF No. 285 at 11–12.  Plaintiff reasons that the agreed upon definition contains two separate definitions: the first definition, which refers to the use of relay ladder diagram language, articulates one type of programmable controller; the second definition, which is broader than the first, does not require the use of relay ladder diagram language and allows for different programming languages.  *Id.* at 2–4.  Plaintiff further argues that the patent's preferred embodiment does not use relay ladder diagram language, and, therefore, to read in such a requirement would exclude the preferred embodiment from the scope of the claim.  *Id.* at 11-12.

The Court agrees with plaintiff for several reasons.  First, as plaintiff argues, construing programmable controller to require the use of relay ladder diagram language would exclude the preferred embodiment from the scope of the claim.  The Federal Circuit has found that "'a claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) (quoting *Globetrotter Software, Inc. v. Elan Software Grp., Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004)). Here, the preferred embodiment would be excluded by requiring the use of relay ladder diagram language because the preferred embodiment relies on the MiltiPro+MC programmable controller, which does not

use relay ladder diagram language.  ECF No. 285 at 3.  Indeed, in the entire patent, there is no reference to relay ladder diagram language.  ECF 287-7.

Second, the agreed upon definition derives from *Probatter Sports, LLC v. Joyner Technologies, Inc. ("Joyner")*, 518 F.Supp.2d 1051 (N.D. Iowa 2007).  In that case, the district court relied on both the definition of programmable controller and the definition of programmable controllers from the MCGRAW–HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS found on the website "answers.com."  *Id.* at 1066–67.  The *Joyner* opinion leaves out a key component of that dictionary's definition of programmable controllers:

> Historically, process control of a single or a few related devices has been implemented through the use of banks of relays and relay logic for both the control of actuators and their sequencing.  The advent of small, inexpensive microprocessors and single-chip computers, or microcontroller units, brought process control from the age of simple relay control to one of electronic digital control while neither losing traditional design methods such as relay ladder diagrams nor restricting their programming to a single paradigm.

*Joyner*, N.D. Iowa 05-cv-2045, doc. 159-8.   That dictionary's definition of programmable controllers demonstrates that plaintiff is correct: the first definition is but one type of programmable controller and the second definition encompasses the first definition in addition to programmable controllers employing other types of programming language.  Accordingly, the ordinary meaning that persons of skill would give to the word programmable controller would not require the use of relay ladder diagram language.

Finally, this Court's decision clearly stated that the term was dually defined, indicating that the word has two meanings – one generic and one exemplar.  Thus, whether the first definition includes the term relay ladder

diagram language is irrelevant to the question of whether the second definition requires relay ladder diagram language.  A programmable controller must satisfy only one of the definitions.  Because the second definition contains no such restriction, any computer programming language may be used in a programmable controller.  Accordingly, to the extent that its prior definition was unclear, the Court now clarifies that a programmable controller is a device controlling a machine using any computer programming language.  Because a programmable controller does not require relay ladder diagram language, defendant is not entitled to summary judgment.

### III.   PLAINTIFF'S SUMMARY JUDGMENT MOTION

Plaintiff moves for summary judgment as to all infringement claims pertaining to the '649 and '924 patents.  ECF No. 298.  Plaintiff argues, in relevant part, that no genuine factual dispute exists with respect to whether defendant infringed (both literally and under the doctrine of equivalents) on all the relevant patent claims at issue.[3]   ECF No. 300.  Defendant opposes, in relevant part: (1) plaintiff should be estopped from claiming infringement because plaintiff remained silent after defendant informed plaintiff that the basic design of defendant's machine predated plaintiff's machine; (2) material questions of fact remain as to whether defendant literally infringed because the cited admissions were based on an understanding that programmable controller did not employ

---

[3]   Plaintiff also reiterates its argument that defendant failed to plead noninfringement as an affirmative defense and argues that its patents are valid. ECF No. 300 at 8, 41.  The Court addresses the waiver argument in Section II(b) of this order, ruling that waiver is inapplicable.  The Court addresses defendant's validity arguments in a separate order, ruling that material disputes of fact remain.

11

relay ladder diagram language; and (3) plaintiff waived any infringement claim based on the doctrine of equivalents.  ECF No. 305.

Section III addresses whether: (a) equitable estoppel bars plaintiff's infringement claims; (b) defendant literally infringed; and (c) plaintiff should be barred from seeking relief based on the doctrine of equivalents and, if not, defendant infringed under the doctrine of equivalents.  The Court rules that: (a) genuine issues of material fact remain as to whether equitable estoppel bars plaintiff's infringement claims; (b) defendant, as a matter of law, literally infringed on all relevant claims; and (c) plaintiff did not waive its the doctrine-of-equivalents argument, and defendant, as a matter of law, infringed under the doctrine of equivalents, assuming that it did not literally infringe with respect to the use of a programmable controller.

A. <u>Defendant's Equitable Estoppel Argument</u>

Defendant argues that plaintiff cannot pursue its infringement claims against defendant because plaintiff failed to respond to defendant's September 2003 letter in which defendant asserted that its machine predated plaintiff's patents.  ECF No. 305 at 10.  Defendant reasons that plaintiff's silence led defendant to believe that plaintiff had abandoned any infringement claim.  *Id.* Plaintiff calls defendant's factual assertion "a blatant lie." ECF No. 321 at 13.

As an initial matter, it is unclear what relevance equitable estoppel has on plaintiff's motion for partial summary judgment.  Plaintiff has moved for partial summary judgment on its infringement *claims*, and equitable estoppel is an affirmative *defense*.  Summary judgment may be granted with respect to any

"claim *or* defense--or the part of each claim or defense."   Fed. R. Civ. P. 56(a) (emphasis added).   Thus, defendant's argument is only relevant to the extent that defendant is entitled to summary judgment based on equitable estoppel.   But defendant has not moved, in any of its three summary judgment motions, for summary judgment based on equitable estoppel.   Nonetheless, given that both parties have had notice and a reasonable time to respond, the Court analyses whether defendant is entitled to summary judgment based on estoppel before discussing the subject matter of plaintiff's summary judgment motion.   *See* Fed. R. Civ. P. 56(f).   The Court rules that summary judgment is not appropriate on the equitable estoppel defense because a material question of fact remains with respect to whether plaintiff engaged in misleading conduct.

In a patent action, equitable estoppel is an affirmative defense "addressed to the sound discretion of the trial court."   *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (citations omitted). To warrant estoppel, an accused infringer must show:

> (1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement.

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) (citing *Aukerman*, 960 F.2d at 1028). Additionally, "the court must consider all evidence relevant to the equities." *Id.*   "[W]hile the facts relied upon to establish an equitable estoppel must be clear, positive, and unequivocal in their

implication, these facts need not be established by any more than a fair preponderance of the evidence." *Aukerman*, 960 F.2d at 1046.

With respect to the first element of an equitable estoppel defense, misleading "'conduct' may include specific statements, action, inaction, or silence where there was an obligation to speak." *Id.* at 1028. "[S]ilence alone will not create an estoppel unless there was a clear duty to speak, . . . or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested." *Aukerman*, 960 F.2d at 1043 (citations omitted).  Put another way, "[t]he first prong of the equitable estoppel test may also be satisfied by silence, provided 'that the silence is accompanied by another factor lending to the conclusion that the silence was sufficiently misleading to amount to bad faith.'" *Integrated Liner Techs., Inc. v. Specialty Silicone Prods., Inc.*, 2012 U.S. Dist. LEXIS 157381, at *69 (N.D.N.Y. Nov. 2, 2012) (quoting *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995)).

The following facts are not disputed.  On August 15, 2003, to bring the question of infringement to defendant's attention, plaintiff's counsel sent defendant's CEO Bill Greene a letter in which counsel described plaintiff's machine and the patents issued for that machine and asked defendant to identify any patents covering defendant's machine.  ECF No. 301-7 (Ex. G); *see also* ECF Nos. 299 at ¶ 30; 306 at ¶ 30.  The clear tenor of the letter is that ProBatter suspects that Sports Tutor was infringing on its patent.  On September 4, 2003, defendant responded, stating that in 1997 the patent for HomePlate was issued to

14

Jack Scott in 1997 and assigned to defendant in 2002.  ECF No. 306-2 (Ex. B) at 5 (Ex. 1); *see also* ECF Nos. 299 at ¶ 32; 306 at ¶ 32.

The relevant dispute concerns what happened after September 4, 2003. Defendant's opposition brief attached a declaration from Greene in which he declares that "ProBatter never responded to my September 4, 2003 letter. I did not hear anything further from ProBatter until I received notice of their lawsuit filed December 28, 2005." ECF No. 306-2 (Ex. B) at ¶ 6.  Plaintiff asserts that its counsel placed a call to defendant on September 9, 2003 "to discuss the infringement claim" and sent defendant another letter on November 13, 2003. ECF No. 321 at 13.  Plaintiff supports its contention by attaching the November 13 letter in which counsel references the September telephone conversation and further indicates that defendant falsely assured plaintiff that it would not be producing video pitching machines, which were protected by another patent held by plaintiff.  ECF No. 323-11 (Ex. AA).  Defendant sought and was granted leave to file a sur-reply, ECF No. 336, but never responded to plaintiff's assertion regarding the September 9, 2003 phone call and November 13, 2003 letters.

The above dispute demonstrates that a genuine issue of material fact remains as to whether plaintiff's silence or statements misled defendant. Defendant's entire argument is premised on plaintiff's silence, which must be supported by other evidence demonstrating that the silence was misleading, rather than any affirmative act taken by plaintiff.  Defendant's only evidence of plaintiff's silence is an affidavit from defendant's CEO William Green averring to events that occurred over a decade ago.  In his affidavit, William Green avers that

15

ProBatter did not respond to his communication in September of 2003. The affidavit is directly contradicted by plaintiff's November 2003 letter in which its counsel states that he and Green had a follow-up telephone conversation. In addition, the letter states that Green had assured plaintiff's counsel that defendant was not infringing on the ProBatter patents. Finally, the letter states that ProBatter had heard rumors to the contrary that Sports Tutor was indeed infringing and asks Green to call him to discuss the rumors. Because both sides have provided conflicting evidence as to whether plaintiff engaged in misleading conduct, defendant has failed to demonstrate the absence of a material question of fact with respect to the first element of its affirmative defense of equitable estoppel. Accordingly, the Court denies summary judgment with respect to this defense.

B. <u>Literal Infringement</u>

Plaintiff argues that no genuine issue of material fact remains as to whether defendant literally infringed because, *inter alia*, defendant's CEO and consultant of baseball admitted, and plaintiff's own expert testified, that defendant's machine has all the elements of every purportedly infringed claim in patents '649 and '924. ECF No. 300 at 13-41. Defendant opposes, generally arguing that the admissions of its employees do not prove infringement because those admissions were based on the "plain and ordinary meaning of the claim terms" rather than the Court's technical construction of those claims as "means-plus-function claims." ECF No. 305 at 6–8. Defendant explains only that its employees operated under the mistaken belief that a programmable controller does not

16

require the use of relay ladder diagram language; it provides no other explanation for what terms its employees misunderstood.  *Id.*

Deciding an infringement claim is a two-step process.  *British Telecomms. PLC v. Prodigy Commc'ns Corp.*, 217 F.Supp.2d 399, 402 (S.D.N.Y. 2002).  A court first construes the patent claims at issue to determine their scope and meaning. *Id.*  A court then compares the allegedly infringing device against the claims as construed to determine whether the accused device infringes on those claims. *Id.*  Here, the Court has already construed the claims at issue in the opinion,[4] *see* ECF No. 274; thus, only the question of infringement remains.

"A device literally infringes a patent, when it embodies every limitation of the asserted claims . . . .  Literal infringement of a claim exists when each of the claim limitations reads on, or in other words is found in, the accused device." *See British Telecomms*, 217 F.Supp.2d at 402 (internal quotation marks and citations omitted).  "'Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'" *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374–75 (Fed. Cir. 2007) (quoting *PC Connector Sols. LLC v. SmartDisk*

---

[4] In plaintiff's opposition to defendant's summary judgment motion, plaintiff appears to argue that claim 10 of patent '649 does not require the use of a programmable controller.  ECF No. 285 at 5 ("Finally, Sports Tutor has incorrectly read a Programmable Controller as necessary or [sic] every asserted claim.  This is simply not true.  Claim 10 of the patent recognizes . . . .").  Plaintiff does reiterate this bizarre assertion in its summary judgment motion.  *See* ECF No. 300 at 30–31.  In any event, this Court's claim construction opinion made clear that claim 10, which is dependent on claim 9, requires a programmable controller because claim 9 requires a programmable controller.  ECF No. 274 at 37–38.

*Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)).  Summary judgment is appropriate when "defendant's employees, defendant's counsel, and the [device's] designer all acknowledged infringement, and where [the accused infringer] does not dispute that the accused device is in all material respects a [patent] embodiment."  *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1322 (Fed. Cir. 2004).

In its statement of material facts, plaintiff asserts that defendant's CEO and consultant of baseball generally admitted, and plaintiff's own expert testified, that defendant's machine has all the elements of every purportedly infringed claim in patents '649 and '924.  ECF No. 299 at ¶¶ 18–20, 22.  Although defendant "denied" these general statements, defendant's denial is based solely on the use of a programmable controller.  ECF No. 306 at ¶¶ 18–20, 22.  More specifically, defendant admits that its machine is a ball-throwing machine, includes at least one rotating wheel for propelling the ball forward, uses dynamic breaking means for rapidly decorating the speed of at least one rotating wheel, and has at least one propulsion motor for powering the propulsion of balls toward a batter.  ECF Nos. 299 at ¶¶ 21, 24–25, 29; 305 at ¶¶ 21, 24–25, 29.  Defendant also implicitly admits that its machine includes means to interchangeably deliver pitches of different types to different locations at different speeds to the extent that its machine has a power head, a motor drive, drive motor controls and companion motor drives with dynamic breaking circuits, horizontal and vertical linear actuator and controls.  ECF Nos. 299 at 22 at ¶ 22; 305 at ¶ 22.  It denies that its machine uses a programmable controller.  *Id.*

18

The Court rules that no genuine issue of material fact remains as to whether defendant literally infringed. Defendant's admissions in its counterstatement of material facts, combined with this Court's own independent examination of the evidence in support of plaintiff's statement of material facts, leads to the conclusion that defendant's machine: (1) is a ball-throwing machine, ECF Nos. 301-8 (Green Dep.) at 14[5]; 301-9 (Henderson Dep.) at 3; 301-10 (Request for Admissions) at 2; (2) includes three rotating wheels for propelling a ball forward, wherein said wheels are positioned at equal distances and angles relative to one another, ECF Nos. 301-8 (Green Dep.) at 14–15; 301-9 (Henderson Dep.) at 4–6, 8–9; 301-10 (Request for Admissions) at 4–5; (3) uses dynamic breaking means for rapidly changing, including decelerating, the speed of each rotating wheel/propulsion motor, ECF Nos. 299-3 (Suba Decl.) at ¶¶ 6–8; 301-8 (Green Dep.) at 15; and (4) has a propulsion motor for powering the propulsion of balls toward a batter, ECF No. 301-9 (Henderson Dep.) at 8.

Similarly, defendant's implicit admission in its counterstatement of material facts, combined with this Court's own independent examination of the evidence in support of plaintiff's statement of material fact, leads to the conclusion that defendant's machine includes means to interchangeably deliver pitches of different types to different locations at different speeds in less than ten-second intervals in that its machine: (a) has a power head that is pivotely mounted on a base at a center pivot about which the power head may be pivoted in both

---

[5] The Court uses the .pdf pagination for the deposition transcripts because it cannot decipher where the original pagination begins or ends as two original pages appear on the same page as the exhibit as submitted.

horizontal and vertical directions; (b) a motor drive and drive motor controls and companion motor drives with dynamic breaking circuits; and (c) horizontal and vertical linear actuators and controls. ECF Nos. 299-3 (Suba Decl.) at ¶¶ 6-8; 301-8 (Green Dep.) at 6, 15–17, 27–28; 301-9 (Henderson Dep.) at 3–6, 10–11; 301-10 (Request for Admissions) at 6, 8–9, 17.

Finally, although defendant denied that its machine uses a programmable controller in its counterstatement of material facts, no material dispute of fact remains with respect to this issue.   Defendant's denial was based on a misreading of this Court's claim construction opinion, which, as noted above, adopted the "plain and ordinary meaning" of programmable controller. Thus, when defendant's employees admitted, and plaintiff's expert declared, that defendant's machine uses a programmable controller, this evidence proves that this particular element (present in all claims in the '649 patent) is met.   *See* ECF Nos. 299-3 (Suba Decl.) at ¶ 9; 301-8 (Green Dep.) at 27–28; 301-9 (Henderson Dep.) at 11.   The programmable controller in defendant's machine includes a programmable microprocessor.   *Id.*  That programmable microprocessor includes a data table that includes the speed of each wheel and horizontal and vertical positions of the power head for each pitch type at each speed and location.   ECF No. 301-10 (Request for Admissions) at 18.   That programmable microprocessor can be operated in manual or automatic mode.   *Id.* at 19.   Accordingly, this Court grants summary judgment on plaintiff's infringement claims based on the undisputed evidence of literal infringement.

C. <u>Doctrine of Equivalents</u>

The Court's analysis need not go any further than granting summary judgment on the grounds of literal infringement: if defendant's device literally infringes, it must also infringe under the doctrine of equivalents because that doctrine "enlarge[s] the scope of a claim beyond its literal meaning."  *Custer v. United States*, 224 Ct. Cl. 140, 160 (1980).  However, defendant vigorously asserts that the definition of programmable controller requires the use of relay diagram language.  ECF No. 305 at 7.  In the interests of finality and certainty, the Court considers plaintiff's alternative argument that defendant's machine infringes under the doctrine of equivalents even if the Court adopts defendant's preferred definition of programmable controller.

In support of its doctrine-of-equivalents argument, plaintiff argues, that the use of a different programming language in the programmable controller would be an insubstantial substitution because there is nothing unique about the use of relay ladder diagram language in a programmable controller.  ECF No. 300 n.62 (citing ECF No. 285 (Plaintiff's Opp'n) at 14–18).  Defendant opposes, arguing, in relevant part, that plaintiff waived its entitlement to rely on the doctrine of equivalents by failing to raise that argument in its answer and discovery requests, thereby preventing defendant from performing discovery on this issue.[6]

---

[6] Defendant also: (1) argues that the doctrine of equivalents does not eliminate claim elements; and (2) challenges the sufficiency of plaintiff's statement of material facts with respect to whether defendant's programmable controller is equivalent.  ECF No. 305 at 9–10.  These arguments are meritless.  As to the first, this is a general principle of law rather than an argument as to why the doctrine of equivalents does not apply in this circumstance; plaintiff has not made any statements that contradict this principle.  *See, e.g.*, ECF No. 285 at 15 ("'The doctrine of equivalents prohibits one from avoiding infringement liability by making only insubstantial changes and substitutions.' *Graver Tank*, 339 U.S. at

ECF No. 305 at 8.  The Court first addresses defendant's waiver argument and then discusses whether summary judgment is appropriate under the doctrine of equivalents.  The Court concludes that no material dispute of fact remains with respect to whether the programmable controller in defendant's machine is equivalent to the programmable controller as patented.

### 1. Waiver

As an initial matter, it is of no consequence that plaintiff did not use the words "doctrine of equivalents" in its complaint: "the nature of the infringement—whether literal or under the doctrine of equivalents—need not be pleaded."  *Revlon Consumer Prods. Corp. v. Estee Lauder Companies, Inc.*, 2003 WL 21751833, *32 (S.D.N.Y. July 30, 2003) (citation omitted); *see also Auburn Univ. v. Int'l Bus. Machs., Corp.*, 864 F.Supp.2d 1222, 1225 (M.D. Ala. 2012) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356–57 (Fed. Cir. 2007).  "[T]he specifics of how [defendant's] purportedly infringing device works is something to be determined through discovery."  *McZeal*, 501 F.3d at 1358.  Therefore, the relevant question to be determined is whether, during discovery, plaintiff shirked its duty to disclose the basis for its direct infringement claims.

Defendant's argument that plaintiff waived its doctrine-of-equivalents argument is based entirely on the plaintiff's response to the following interrogatory:

---

732.").   As to the second argument, equivalence is a question of law rather than fact.  Thus, it would be improper for plaintiff's Rule 56(a) statement to state that the programmable controller in defendant's machine is equivalent to the patent's use of programmable controller.

**For each of the asserted claims, please explain the basis for your contention that the HomePlate machine infringes. In so doing, please be sure to include the following information:**

**a) For each limitation of each claim, identify the part(s) of the HomePlate Machine that you contend satisfies the limitation;**

**b) For each limitation of each claim, identify all evidence upon which you intend to rely to establish that the HomePlate machine infringes.**

ECF No. 290-2 at 3.   This interrogatory mirrors this Court's standing order requirement in which:

> **Unless otherwise specified by the Court, not later than forty-two (42) days after the filing of the parties' 26(f) report, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions," which identifies for each opposing party, each claim of each patent-in-suit that is allegedly infringed and each product or process of each opposing party of which the party claiming infringement is aware that allegedly infringes each identified claim.**

ECF No. 117.  Plaintiff responded with each limitation of each claim and identified the part of defendant's machine that satisfied the limitation.  *Id.* at 4–12 (.pdf pagination).  The response did not specifically identify the doctrine of equivalents and, with respect to programmable controller, did not disclose any evidence other than the programmable controller in defendant's machine.

Neither defendant's interrogatory nor this Court's standing order required plaintiff to specifically articulate its legal theory, but plaintiff's doctrine-of-equivalents contention would have been evident had plaintiff disclosed evidence other than the part of defendant's machine on which plaintiff intended to rely in support of its infringement contention.   Nonetheless, at that stage in the litigation, there was no explicit dispute as to the meaning of programmable controller.   Therefore, plaintiff would have had no idea of knowing whether it

would rely on the doctrine of equivalents; it reasonably assumed that it would prove literal infringement with respect to that element of the claims.   Rather, the first time plaintiff would have reasonably assumed that it would argue the doctrine of equivalents was in April 2014 when defendant moved for summary judgment on the basis that a programmable controller must use relay ladder diagram language.   Accordingly, plaintiff's argument for the application of the doctrine of equivalents is timely.

Even assuming that plaintiff did not timely assert the doctrine of equivalents, defendant has made no showing of prejudice.   It cursorily argues that it was prevented from seeking discovery.   The problem with defendant's argument is two-fold.   First, defendant could have moved to reopen discovery on the basis that a new issue unexpectedly arose on a showing of good cause. Indeed, the Court reopened discovery on an unrelated issue after the present issue arose. ECF No. 388.   Second, defendant does not identify what evidence it would have sought if it had been permitted to conduct discovery on this issue. The Court cannot make a finding of prejudice if defendant does not explain what discovery it was prevented from doing.

Finally, defendant offers no persuasive authority to convince the Court that waiver is appropriate.   Defendant relies solely on *Realtime Data, LLC v. Morgan Stanley*, 554 F. App'x 923, 937 (Fed. Cir. 2014). However, *Realtime Data* is distinguishable from the instant case because the plaintiff in that case was explicitly required by the local rule of the districts in which the case was litigated to disclose its theories of infringement.   *See Realtime Data, LLC v. Morgan*

*Stanley*, No. 11Civ.6696, et al., 2012 U.S. Dist. LEXIS 109954 (S.D.N.Y. Aug. 12, 2012).  Here, there are no local rules on point, and, as the Court already noted, plaintiff complied with its standing order.

### 2. *Legal Standards Governing the Doctrine of Equivalents*

The doctrine of equivalents "prohibits one from avoiding infringement liability by making only 'insubstantial changes and substitutions . . . which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law.'" *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1340 (Fed. Cir. 2011) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950)). The Federal Circuit has provided two different articulations of the analysis a court must perform in considering the doctrine of equivalents.  *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39–40 (1997)). Under the first, referred to as the "insubstantial differences test," ""[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *Id.* (quoting *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004)).  Under the second test, referred to as the "function-way-result" test, "an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" *Id.* (quoting *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001)).  The Supreme Court has observed that "[t]here seems to be substantial agreement that . . . the triple identity test may be suitable for

25

analyzing mechanical devices," but it has nonetheless indicated that "the particular linguistic framework used is less important than whether the test is probative of the essential inquiry: Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 40.

"'[W]hile many different forms of evidence may be pertinent, when the patent holder relies on the doctrine of equivalents, as opposed to literal infringement, the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.'" *Eastcott v. Hasselblad USA, Inc.*, 564 F. App'x 590, 595 (Fed. Cir. 2014) (quoting *AquaTex Indus. Inc. v. Techniche Sol'ns*, 479 F.3d 1320, 1328 (Fed. Cir. 2007)).

### 3. *Application of Standards*

Plaintiff argues that, even if the Court adopts defendant's preferred definition of programmable controller, defendant's machine infringes under the doctrine of equivalents.  ECF No. 300 n.62 (citing ECF No. 285 (Plaintiff's Opp'n) at 14–18).  Specifically, plaintiff asserts that "[a] relay ladder diagram language is only one of many computer languages known at the time the application was filed that could accomplish the same function in a Programmable Controller." ECF No. 285 at 4. Plaintiff further asserts that:

> A relay ladder diagram language is certainly not, however, the only language that can be used for this purpose in a PLC, now or in 1999

when the application that matured into the '649 patent was filed. There is nothing unique about a relay ladder diagram language. Id. It is one of many comparable programming languages used in the industry to accomplish substantially the same function, in substantially the same way, to yield substantially the same result in a Programmable Controller for either embodiment.

Id. at 16 (internal citation omitted).  In support, plaintiff offers the declaration of

Michael Suba, who is employed by plaintiff as its Vice President of Engineering.

ECF No. 287-3. Suba states:

[A] relay ladder diagram language is certainly not the only language that can be used for a [programmable controller], now or in 1999 when the patent was filed. It is one of many comparable programming languages used in the industry to accomplish the exact same function, in the exact same way. The programming language chosen for a [programmable controller] is merely a design choice.

11. This follows a basic and fundamental principal [sic] of engineering that the type of computer programming language utilized to control a device can be easily substituted at any given time by many equivalent languages.

Id. at ¶¶ 10-11.

The record in this case lends essential authenticity to Suba's contention, which defendant does not challenge. As noted above, the "advent of small, inexpensive microprocessors and single-chip computers, or microcontroller units, brought process control from the age of simple relay control to one of electronic digital control while neither losing traditional design methods such as relay ladder diagrams nor restricting their programming to a single paradigm." Joyner, N.D. Iowa 05-cv-2045, doc. 159-8.  Put another way, various computer programming languages perform substantially the same function, in substantially the same way, to achieve substantially the same result. The use of a different

computer programming language is an insubstantial change. Accordingly, plaintiff would prevail on its infringement claims even if the Court misconstrued the parties' stipulated definition of programmable controller not to require relay ladder diagram language.

## CONCLUSION

For the reasons stated above, defendant's motion for partial summary judgment on infringement is DENIED and plaintiff's motion for partial summary judgment on infringement is GRANTED.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 15, 2015.